STATE of Tennessee, Appellee,

v.

**Todd Anthony KING a/k/a Muchaka A'Mal Zukinta, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 8, 1995.

---

Ardena Garth, Dist. Public Defender, Donna Robinson Miller, Asst. Public Defender, Chattanooga, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Sharon S. Selby, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., H.C.

Bright, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

PEAY, Judge.

### OPINION

The defendant was convicted by a jury of aggravated robbery. The trial judge sentenced the defendant as a Range II offender and imposed a twenty-year sentence.

In this appeal as of the right, the defendant raises five (5) issues for review.[1] He contends that:

1. The evidence was insufficient as a matter of law to support the verdict of aggravated robbery;

2. His due process rights were violated when the State's prosecuting witness committed perjury regarding his prior criminal record and when the State misrepresented the witness' prior criminal record to the jury;

3. The trial judge improperly commented on the evidence, demonstrating bias in favor of the prosecuting witness and bolstering the witness' credibility through his statements;

4. The trial court erred in sentencing the defendant as a Range II offender and in imposing the maximum sentence; and

5. The trial court erred in failing to instruct the jury on the lesser included offense of theft where there were facts to support the offense of theft.

Following a review of the record, we reverse the trial court and remand for a new trial.

The testimony presented at trial revealed that on December 14, 1992, the defendant went to Capital Toyota in Chattanooga, Tennessee, and looked at used cars on the lot. A short time later, Anthony Casteel, an employee of Capital, saw the defendant, whom he had known in school, and went to speak with him. The defendant and Casteel chatted for a few moments until Casteel returned to his job in the service area. During this time Archie Cross, a salesman for Capital, had been watching the defendant to deter-

mine whether he was simply looking or was a potential buyer. Cross eventually approached the defendant and discussed the potential sale of a 1987 Camaro. The defendant told Cross that he was looking at the car for his girlfriend and wanted to show it to his girlfriend's grandmother for approval prior to making the purchase.

Cross testified that he was prepared to allow the defendant to test drive the car alone but that the defendant had asked Cross to accompany him. With the defendant driving, the two (2) men stopped for fuel at a nearby gas station. Cross left the defendant in the car while he went to pay for the gasoline. Cross returned to the car, and the defendant drove for several miles. When the defendant began to take roads leading away from the desired location, Cross became concerned. A short time later, the defendant turned into a church parking lot and drove behind the church. Cross and the defendant exited the car, and as the defendant got to the rear of the car, Cross saw that he had a gun. At that point the defendant told Cross that, "I've got to do this."

Cross stated that the gun had been partially concealed with a handkerchief but that he had seen the long black barrel and brown handle. Cross further stated that the defendant had not pointed the gun directly at him. The defendant grabbed Cross under the arm and led him to a nearby wooded area. Cross, believing that he was going to be shot, begged the defendant to take the car and let him go. In a further attempt to reason with the defendant, Cross told the defendant that he understood because he had "done time." Eventually, the defendant told Cross to walk into the wooded area behind them. As Cross walked away, the defendant drove away in the Camaro.

Cross testified that he had approached several homes to call for assistance but had been unable to find anyone at home. Finally, he flagged down a passing motorist and explained to her that he had been robbed. Once Capital Toyota received word of the robbery, the manager informed Casteel, who

---

1. For clarity, we chose to address the defendant's issues in a different order than as set forth in his brief.

identified the suspect as Tony King. Thereafter, the police obtained a warrant against the defendant.

The defendant drove the car to his sister's home in Cleveland, Tennessee, but did not attempt to conceal it. Pursuant to a warrant, Chief Benefield of the Bradley County Sheriff's Department, drove to the sister's address, saw the Camaro parked in the driveway, and placed the defendant under arrest. When Chief Benefield questioned the defendant's brother-in-law regarding his knowledge of a black steel revolver, the brother-in-law showed Benefield such a gun he kept hidden in his closet. He testified that he owned the gun and that it appeared to be as he had left it.

At trial, the defendant denied that the incident occurred as presented by the State's witnesses. Instead, he claimed that he, Cross, and Casteel had devised a scheme to steal the car. Specifically, the defendant stated that he was to take the car for a test drive along with Cross, then drop Cross off at the church. Cross would then wait ten (10) minutes before calling the police, and for further delay Cross would give the police only a vague description of the defendant. The defendant denied that he had possessed a handgun. According to the defendant, under this plan he was to be paid for taking the car while the dealership would recoup its losses through the insurance company. The defendant claimed that if he had not heard from Cross or Casteel, he would have taken the car back to a lot across from the dealership and left the keys in the car.

■ In the first issue we consider, the defendant claims that the evidence was insufficient as a matter of law to support his conviction for aggravated robbery. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant

guilty beyond a reasonable doubt. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982).

■ When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

■ "Aggravated robbery is robbery as defined in § 39–13–401: (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. . . ." T.C.A. § 39–13–402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39–13–401(a). In the present case the victim, Cross, testified that while accompanying the defendant on a test drive of an automobile, the defendant had driven him to a church, had presented a weapon which frightened Cross, and had driven away in the automobile. This testimony alone establishes the elements necessary to support a conviction for aggravated robbery.

The defendant contends that his version of the facts should have been accepted by the jury. During the defendant's testimony he claimed that the entire incident was a scheme devised by Cross, Casteel, and himself. He denied that he pulled a gun on Cross or that he even possessed a gun. Therefore, the defendant concludes that he should have been charged with theft rather than aggravated robbery. In addition, he attacks the credibility of Cross' testimony as being "fraught with inconsistencies."

■ However, questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by

the trier of fact, not this Court. *Cabbage,* 571 S.W.2d 832, 835. In this case, the jury was presented with both versions and chose to believe the victim. We will not reweigh the evidence or evaluate the credibility of the State's witness. The evidence was sufficient to convict the defendant of aggravated robbery.

In the next issue, the defendant argues that his due process rights were violated when the State's witness, Cross, committed perjury by lying under oath regarding his prior criminal record and when the State misrepresented the witness' prior criminal record to the jury. The defendant's challenge here is two-fold. First, he claims that he was denied certain exculpatory information as required under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Second, he claims that the victim's testimony regarding his own criminal record was untrue and therefore violated the defendant's due process rights.

▮ Addressing the *Brady* issue first, we acknowledge that information which is exculpatory in nature must be revealed to the defendant. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. Failure to produce such evidence may result in a new trial. *State v. Williams,* 690 S.W.2d 517, 525 (Tenn.1985). Prior to the trial, the defendant made a request from the State for all exculpatory information regarding the victim's prior criminal record. This request resulted in the State producing an FBI printout of Cross's record. Due to policy reasons, the State could not allow defense counsel to copy the printout but could and did permit the assistant public defender to look at the printout which included a number of offenses through 1974. The printout did not reveal more recent charges including: crime against a revenue officer occurring on January 12, 1987; passing a one thousand two hundred dollar ($1200) worthless check on August 8, 1991; and passing a twenty-five dollar ($25.00) worthless check for which he was convicted and received a suspended sentence.[2] The defendant now claims that because the FBI report did not include these more recent charges and because he was unaware of

these charges during the trial, he was denied both the ability to impeach the victim and his due process rights. We disagree.

▮ First, the criminal history of a victim is not the kind of information the State has a duty to produce pursuant to Rule 16 of the Tennessee Rules of Criminal Procedure. Further, as to the *Brady* claim, the defendant has not shown nor does the record reveal that the State possessed the more recent charges against the victim. The defendant concludes that with this information he would have been able to "absolutely" impeach the victim regarding his statement which gave the appearance that he had not been in trouble since 1982 or 1983. Again, the record does not indicate that these charges were known to the parties during the trial. Even if the State should have found these charges, in light of the extensive cross-examination of the victim regarding a laundry list of past convictions and prison sentences, any error is harmless beyond a doubt. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a). The defendant was not denied his due process rights based upon the absence of the victim's more recent charges.

▮ Similarly, the defendant's claim that the victim testified falsely is not substantiated in light of the questions asked of him. Counsel for defendant asked the victim a number of questions regarding his extensive criminal history. The victim acknowledged on each occasion, though sometimes hesitantly, that he had been incarcerated for a number of offenses. The victim's response to defense counsel's question that he had not "done time" in a number of years was not false. The victim received a fine and was placed on probation for the 1992 worthless check conviction and did not "do time" for the offense. Finally, the evidence presented at trial is void of any proof that the victim had done time more recently than ten (10) years ago as he testified. Therefore, the defendant was not denied his due process rights.

Next, the defendant contends that the trial judge erred when he improperly vouched for

---

**2.** These charges do not appear in the record until the motion for new trial hearing.

the character of the victim. Specifically, the defendant points to two (2) comments made by the trial judge which he claims demonstrated bias against him. The first comment arose during the testimony of Gene Denham of Capital Toyota when he testified regarding the hiring of Cross. Denham acknowledged that Cross failed to inform him of his extensive past record. Instead, Cross told Denham that he had been in trouble on a prior occasion for failing to collect sales tax. During this examination the trial judge interjected the question, "he [Bob McKamey, owner of Capital Toyota] like other employees [sic] do [sic] hire ex-convicts if they've paid their debt to society?" but no objection was raised.

The second statement objected to by the defendant was made by the trial judge during the State's closing argument when the prosecutor stated that Cross had been "straight all this time." This statement related to the prosecutor's comment that the cross-defendant had committed criminal offenses ten (10) or twenty (20) years ago. When counsel for the defendant objected to the statement, the trial judge responded, "No, I think that's a fair comment."

 When a trial judge comments on a case, it is his or her responsibility "not to express any thought which would imply that his or her opinion was in favor of or against the defendant." *State v. Gregg*, 874 S.W.2d 643, 644 (Tenn.Crim.App.1993) *citing State v. Harris*, 839 S.W.2d 54, 66 (Tenn.1992). We do not find that the statements by the trial judge violated this rule. Finally, even if one or both of the statements could be considered error, following our review of the entire record we find that any such error was harmless. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a).

 In the fourth issue the defendant claims that the trial court erred in sentencing him as a Range II offender where the State failed to file a notice of criminal record and intent to seek enhanced punishment pursuant to T.C.A. § 40–35–202 and Tenn.R.Crim.P. 12.3. T.C.A. § 40–35–202 requires that the district attorney general file such a statement with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea. T.C.A. § 40–35–202(a). The State argues that the defendant

failed to contradict the certificate of service on the notice which indicates that a copy was sent to the defendant on April 23, 1993. However, the defendant denies that he received a copy and further, the record does not contain a file stamped copy of the notice. Without question, this statement must be filed; however, we are unable to determine from the record whether the defendant received actual notice prior to trial. Further, because we reverse and remand for a new trial on another ground and because the notice requirement is mandatory, it is unnecessary to decipher precisely what occurred or failed to occur in the present case.

 Within this issue the defendant contends that the trial judge inappropriately applied two (2) of the six (6) enhancement factors in determining the defendant's sentence. When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

 The trial judge found as enhancement factors that the defendant had no hesitation about committing the crime when the risk to human life was high and that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. T.C.A. § 40–35–114(10), (16). This Court has previously held that "absent any proof establishing risk to life other then the victim's ... these factors are essential elements of the offense" and, therefore, inappropriate. *State v. Hicks*, 868 S.W.2d 729, 732 (Tenn.Crim.App.1993). However, even though these factors were inappropriate, we think the strength of the four (4) remaining enhancement factors supports the sentence imposed.

Finally, we consider the defendant's contention that the trial judge erred in failing to charge theft as a lesser included offense of aggravated robbery. Following the closing statements, the trial judge charged the jury as to aggravated robbery, robbery, and attempted robbery. Although the defendant failed to request the jury charge for theft, the State asked the trial judge if he intended to charge theft. The trial court ruled that theft was not a lesser included offense and did not include the charge. Upon review of the evidence, we find that the trial court erred in failing to include theft in its charge to the jury.

It is well established that the "trial judge has the duty to give a complete charge of the law applicable to the facts of the case." *State v. Tutton,* 875 S.W.2d 295, 297 (Tenn.Crim.App.1993) *citing State v. Harbison,* 704 S.W.2d 314, 319 (Tenn.), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986). "[A]n offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser." *Howard v. State,* 578 S.W.2d 83, 85 (Tenn.1979). The three elements of theft are verbatim the first three elements of robbery and aggravated robbery.[3] These elements are:

(1) that the defendant knowingly obtained or exercised control over property owned by [Capital Toyota]; and

(2) that the defendant did not have the owner's effective consent; and

(3) that the defendant intended to deprive the owner of the property.

T.P.I.—Crim. 11.01 *citing* T.C.A. § 39–14–103.

At trial, the testimony presented by the State clearly established the basis for charging aggravated robbery, robbery, and attempted robbery. However, the trial judge failed to acknowledge the defendant's version of the facts. The defendant's testimony was that the entire incident was a scheme devised by himself, Casteel, and Cross for theft of the automobile. Specifically, the defendant denied that he had a gun or that he used force to obtain the automobile. When there is some evidence upon which reasonable minds could convict the defendant of a particular lesser offense, the court is required to instruct regarding that offense. *Johnson v. State,* 531 S.W.2d 558, 559 (Tenn. 1975); *State v. Atkins,* 681 S.W.2d 571, 577 (Tenn.Crim.App.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). The trial judge's failure to charge theft in light of the evidence, whether credible or not, denied the defendant his constitutional right of trial by a jury. *Tutton,* 875 S.W.2d at 297. The appropriate remedy for failing to charge the lesser included offense of theft is a remand for a new trial. *Tutton,* 875 S.W.2d at 297.

In summary, we find that the dispositive issue in this case is the trial judge's failure to charge the lesser included offense of theft. Therefore, we reverse and remand this matter for a new trial.

SCOTT, P.J., and TIPTON, J., concur.

accomplished this act with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe it to be a deadly weapon; or (6)(b) the alleged victim suffered serious bodily injury. T.P.I.—Crim. 9.02 *citing* T.C.A. § 39–13–402(a).

---

3. Robbery includes two additional elements which require that: (4) the property be taken by use of force or by putting the person in fear and (5) the defendant took such property intentionally or knowingly. T.P.I.—Crim. 9.01 *citing* T.C.A. § 39–13–401(a). Aggravated Robbery includes a sixth element requiring that: (6)(a) the defendant