IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

SEPTEMBER 1997 SESSION

FILED

October 29, 1997

**Cecil Crowson, Jr.**
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )
          APPELLEE,          )
                             )          No. 02-C-01-9608-CC-00278
                             )
                             )          Madison County
                             )
v.                           )
                             )          Whit Lafon, Judge
                             )
                             )          (Aggravated Robbery)
DEVON EUGENE SMITH,          )
                             )
          APPELLANT.         )


FOR THE APPELLANT:

Thomas T. Woodall
Attorney at Law
P.O. Box 1075
Dickson, TN 37056-1075
(Appeal Only)

George Morton Googe
District Public Defender
227 Baltimore Street
Jackson, TN 38301-6137
(Appeal Only)

Jeffrey J. Mueller
Assistant Public Defender
227 Baltimore Street
Jackson, TN 38301-6137
(Trial Only)

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Janis L. Turner
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

James G. Woodall
District Attorney General
P.O. Box 2825
Jackson, TN 38302-2825

James W. Thompson
Assistant District Attorney General
P.O. Box 2825
Jackson, TN 38302-2825


OPINION FILED:_____


AFFIRMED


Joe B. Jones, Presiding Judge

# **O P I N I O N**

The appellant, Devon Eugene Smith (defendant), was convicted of aggravated robbery, a Class B felony, by a jury of his peers. The trial court found that the defendant was a standard offender and imposed a Range I sentence consisting of confinement for ten (10) years in the Department of Correction. The defendant presents two issues for review. He contends the evidence is insufficient to support his conviction and the sentence imposed by the trial court is excessive. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

On the afternoon of August 9, 1995, the defendant entered the Whitehall Foods grocery. He was wearing a jacket, he had a cap on his head, he had the hood attached to the jacket over the cap, and he was wearing either dark goggles or sunglasses. An employee directed the assistant manager's attention to the defendant. Both men thought the defendant was dressed oddly for the month of August as it was hot outside. When the assistant manager confronted the defendant, the defendant told him "[y]ou don't have to worry about anything. I'm not going to steal anything."

As the assistant manager walked away, the defendant called to him. When the assistant manager turned around to face the defendant, the defendant had a pistol in his hand. He told the assistant manager to "[c]ome here." He then told the assistant manager to "go to the office. You're going to give me all the money in the safe." The assistant manager went to the office, opened the safe, and gave all the money and food stamps to the defendant. Together they approached a cashier. The defendant told the assistant manager to "[p]ut some more money in there," referring to a sack he was holding. The assistant manager placed the contents of the register in the bag. The defendant then told the assistant manager to walk toward the rear of the store. The defendant then exited the store.

One cashier had seen the defendant in clubs, and the defendant, according to his own admission, had been inside the store approximately five times. This cashier made an identification of the defendant from a photographic spread. She also made a courtroom

identification. The cashier testified the defendant's nickname was "Milk." The defendant admitted this was his nickname. A second cashier made a courtroom identification of the defendant.

Officers obtained a search warrant to search the defendant's residence. The pistol the defendant used in the robbery was seized and subsequently identified by two employees of the grocery. Also seized were $225 in cash, $205 in food stamps, and bill receipts totaling more than $300, which were paid the morning the house was searched. Food stamps were taken during the robbery.

The defendant presented evidence that he had purchased food stamps from other people including his aunt. He knew this was illegal and constituted a crime. The defendant claimed he purchased the .38 automatic pistol when he was working for a security guard service. He was interested in continuing his work with the guard service and possibly pursuing a career in law enforcement. He also wanted the pistol to protect himself in the neighborhood. There were several shootings, gang activity, and drug trafficking in the area where he lived. The defendant testified he was employed on the date the robbery took place. He also made money playing the keyboard in a band and serving as a disc jockey in clubs.

According to the defendant, his car was inoperable on the date in question. His girlfriend called her cousin to take them to a Kroger store to shop. He stated he wanted to go to a store that closed at 4:30 p.m. Due to the length of time spent at Kroger, he knew he was late and would not be able get to the store before it closed. He denied he robbed the Whitehall Foods on the date in question.

## I.

The defendant contends the evidence contained in the record is insufficient, as a matter of law, to support his conviction for aggravated robbery. He argues the assistant manager and the stock person could not identify the defendant as the perpetrator of the robbery. One of the cashiers could not identify the defendant while viewing a photographic spread. Furthermore, the food stamps were not marked with the store's stamp.

3

As can be seen from the foregoing statement of facts, the evidence is clearly sufficient to support a finding by a rational trier of fact that the defendant was guilty of aggravated robbery beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The defendant intentionally took the property of another and he accomplished this act by employing a deadly weapon, a pistol. Tenn. Code Ann. §§ 39-13-401 and -402.

It must be remembered that this court does not reweigh or reevaluate the evidence when determining the sufficiency of the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied, (Tenn. 1990). Furthermore, this court may not substitute its inferences for those drawn by the trier of fact from circumstantial evidence. State v. Liakas, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 833 (1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the supreme court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

This issue is without merit.


## II.


When an accused challenges the length of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d)(1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and

4

circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). Also, the presumption does not apply when the trial court has failed to consider the sentencing principles, the relevant facts, and the relevant circumstances. Ashby, 823 S.W.2d at 169.

In this case, the trial court stated: "Let the Defendant stand, please. Mr. Devon Eugene Smith, it's the judgment of the Court that you serve 10 years in the penitentiary for armed robbery." During the hearing on the motion for a new trial, the following occurred:

> MR. THOMPSON: Your Honor, the State filed enhancement factors and argued them during the sentencing hearing. Your Honor simply gave a sentence, but I submit Your Honor by implication relied upon the enhancement factors as filed by the State, and I would submit that we had enough enhancement factors filed where Your Honor would have been justified in giving him the maximum sentence. If Your Honor wants a copy of that --
>
> THE COURT: Let me see that to refresh the Court's memory.
>
> MR. THOMPSON: Your Honor will recall, there were several people in the store, and he did have a gun.
>
> THE COURT: All right. Let the record show that the Court found the enhancement factors in this matter, one of which is, the offense involved more than one victim; another instance in that the Defendant possessed or employed a firearm or dangerous weapon; and third, the Defendant had no risk about committing a crime where the risk for human life was high.

Since the record does not establish the trial court followed the mandate set forth in Ashby, this court must conduct a de novo review without a presumption that the findings of the trial court were correct.

The defendant has a history of criminal convictions and criminal behavior. Tenn. Code Ann. § 40-35-114(1). He has been convicted of driving while his license was suspended, driving without a license, driving while under the influence, and violating the open container law. His criminal behavior entails criminal impersonation, carrying a concealed weapon, and driving while his license was revoked. The defendant forfeited his

5

bond on the latter three offenses. He made a judicial admission he purchased food stamps from the recipient of the stamps knowing each purchase was a crime.

The defendant did not hesitate about committing a crime where the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). As a general rule, this factor does not apply in aggravated robbery cases. State v. King, 905 S.W.2d 207, 213 (Tenn. Crim. App. 1995). However, this court has recognized this factor may be applicable if someone other than the victim is placed at risk. State v. Hicks, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993). In this case, several individuals were at risk. There were two cashiers who were present inside the store during the course of the robbery. The assistant manager took money from a cash register as one of the cashiers stood in the vicinity where the defendant was brandishing his weapon. Given these circumstances, this enhancement factor may be used to enhance the sentence within the appropriate range.

The use of the weapon was an element of the offense. Tenn. Code Ann. § 40-35-114(9).

Both of these factors, factors (1) and (10), are entitled to great weight. There were no mitigating factors supported by the evidence. Therefore, a sentence of ten (10) years was warranted for the offense committed by the defendant.

This issue is without merit.


_____
JOE B. JONES, PRESIDING JUDGE


CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
JOE G. RILEY, JUDGE

6