IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 24, 2007

## STATE OF TENNESSEE v. KATIA LENEE HARRIS A/K/A FUZZY

**Direct Appeal from the Circuit Court for Marshall County**
**No. 17290    Robert Crigler, Judge**

---

**No. M2006-02611-CCA-R3-CD** - Filed November 16, 2007

---

The Defendant, Katia Lenee Harris a/k/a Fuzzy, pled guilty to one count of aggravated robbery. The trial court sentenced her to ten years confinement based on the application of three enhancement factors. On appeal, the Defendant contends the trial court erred when sentencing her. We conclude the trial court erred in enhancing the Defendant's sentence based on enhancement factors (1) and (10). Thus, we modify the Defendant's sentence to nine years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J.C. McLIN, J., joined. JOSEPH M. TIPTON, P.J., filed a separate opinion, concurring in part and dissenting in part.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the Appellant, Katia Lenee Harris a/k/a Fuzzy.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Cameron L. Hyder, Assistant Attorney General; Charles F. Crawford, District Attorney General; Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

The Defendant pled guilty to aggravated robbery, a Class B felony, after she and three friends robbed a pizza delivery man on July 25, 2006. Two individuals, the Defendant and Fasonia Radley a/k/a Rudy, were adults and were processed through Marshall County Circuit Court. They acted as "lookouts" while two other individuals, both juveniles, waited behind a house to commit the robbery. We refer to the juveniles by their initials, P.F. and J.R., as is custom in this Court.

P.F., Radley, and the Defendant decided to commit the robbery because, as the Defendant

stated, Radley "wanted some money for some drugs." P.F. claimed he needed the money "so [he] could go see his sick grandmother." Radley said they decided to commit the robbery because the Defendant's "children needed some food." It appears that P.F. was in possession of a gun, which he planned to use in the robbery. Radley stated, P.F. "already had a pistol - it was black and an automatic. I think it was a BB gun but I am not for sure. I don't know where [P.F.] got the gun. The whole time we were talking about it he kept saying, 'I already have a gun.'" P.F. called the gun a "toy gun." Radley ultimately called Pizza Hut and ordered $60.03 worth of pizza, cheese sticks, hot wings, and soda. Radley used another friend's cell phone when ordering. She directed the pizza man to a vacant house where they planned to wait.

When the pizza man arrived to make his delivery, the Defendant and Radley were waiting for him at the end of the driveway. They told the victim to proceed to the back of the house to retrieve his money and drop off the pizza; P.F. and the additional juvenile, J.R., were waiting for the victim there. The Defendant served as a lookout at the driveway to make "sure nothing happened or that any police showed up." As the Defendant further explained in her statement to the police, "I heard [an accomplice] say, 'Just lay it down, man, just lay it down.' I heard the pizza man say, 'Just don't hurt me.'" Minutes later, the pizza man hurried to his car and drove away "real fast." Five minutes later, the four met up again at a friend's house. J.R. brought the pizza, while P.F. arrived with the money. When the group left the friend's house, they left one pizza for the children who were there. P.F. then gave the Defendant three dollars for cigarettes.

At the sentencing hearing, Beth Flatt of the Tennessee Board of Probation and Parole testified that the Defendant claimed she did not know a weapon would be used in the robbery. Flatt testified that three of the individuals, including the Defendant, began the night by discussing how they could obtain money. They somehow determined robbing the pizza delivery man would be the best option. Flatt further testified that, although the Defendant claimed she wanted to return to her six children if she were allowed to avoid jail, she was not actually responsible for any of her children at the time of the crime. Flatt also described the Defendant's employment at sporadic.

On cross-examination, Flatt testified that there was no evidence that the Defendant ever possessed the gun. However, Flatt stated that there were statements by the other individuals indicating that the Defendant was present when the group hatched the plan and when they discussed the need for a gun.

The Defendant testified that she was twenty-four years old, with six children. She stated that, prior to her arrest, she maintained custody of four of the six children. The Defendant stated that she was involved in the initial discussion of the robbery. "At first I told them 'no,' and then, I was like, 'well, yeah, why not? I will be the lookout.'" The Defendant stated that, when the pizza man arrived, Radley escorted him around the house. She stated that she did not see the "BB gun" until after the robbery. The Defendant testified she did not eat any of the food, and P.F. only gave her $3 for cigarettes. The Defendant next admitted she pled guilty to theft under $500 in Davidson County in 2004. She stated she did not pay court costs because she did not have any money. The Defendant stated, "I feel I could have been a better adult. I do have six kids. I could have thought before I did

it, did anything wrong. I am sorry for doing it. I am sorry for ever being involved in it."

On cross-examination, the Defendant stated she had not worked in the year prior to the robbery. She stated she was being supported by a boyfriend and food stamps. She did not ask her boyfriend to give her money to buy cigarettes because "being in that robbery was just something I wanted to do." The Defendant stated the group discussed the robbery for about an hour prior to executing it. When asked how she thought P.F. and J.R. were going to obtain the money and food, the Defendant responded, "I thought he was going to use a weapon he found behind the house. I didn't know a gun or a BB gun, toy gun was going to be involved." She understood there would be a weapon involved, but she did not know the weapon would be a gun.

The Defendant testified the previous conviction for theft under $500 stemmed from her friend stealing clothes from a Nashville mall. The Defendant explained that the incident occurred in 2000, but it was not disposed of until 2004. This was because the Defendant never returned to court after being arrested. She was ultimately found in 2004 after a dispute where the police were called. The Defendant further admitted that her children were in a nearby house during the robbery, and they could have seen her had they looked out the window.

The trial court determined the Defendant was not eligible for probation under Tennessee Code Annotated section 40-35-303. Additionally, the Defendant was not eligible for community corrections under Tennessee Code Annotated section 40-36-106(e)(3). The trial court gave "some benefit" to mitigating factor thirteen – the "catch-all" mitigating factor – because the Defendant confessed to the crime.

In addressing enhancing factors, the trial court determined the Defendant had a previous history of criminal convictions or criminal behavior – the Defendant was previously convicted of theft under $500 and she confessed to using marijuana "once or twice." The trial court also stated, "I am going to consider this addendum about the juvenile," but, because none of the acts committed as a juvenile would constitute felonies if the Defendant was an adult, enhancement factor sixteen did not apply. *See* T.C.A. § 40-35-116(16) (2006). However, the court stated, "I am going to place some weight on that, on this addendum. It is lengthy." The court considered this with regards to enhancement factor one – a previous history of criminal convictions or criminal behavior. *See* T.C.A. § 40-35-114(1) (2006). The trial court also enhanced the Defendant's sentence because she had no hesitation about committing a crime where the risk to human life was high. *See* T.C.A. § 40-35-114(10) (2006). Finally, the trial court enhanced the Defendant's sentence based on the fact that it was committed to "gratify the defendant's desire for pleasure or excitement," because she stated, "This was just something I wanted to do." T.C.A. § 40-35-114(7). The trial court determined ten years would be an appropriate sentence.

## II. Analysis

On appeal, the Defendant alleges the trial court erred in sentencing her to ten years confinement. When a defendant challenges the length, range or manner of service of a sentence, this

Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record and gave due consideration to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, T.C.A. § 40-35-103 (2006), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). Because the trial court erroneously applied two of the three enhancement factors it considered, we will review the sentence de novo without a presumption of correctness.

In conducting a de novo review of a sentence, we must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancement factors, (7) any statements made by the defendant on his or her own behalf and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

Specifically, the Defendant alleges the trial court erred in enhancing the Defendant's sentence based on juvenile offenses that would not constitute felonies if committed as an adult, based on the Defendant having committed the robbery to gratify the Defendant's desire for pleasure or excitement, and because there was no risk to life other than the victim. *See* T.C.A. § 40-35-114(1), (7), & (10) (2006).

Enhancement factor (1) states, "The Defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." The trial court took into account three things in enhancing based on this factor: (1) the Defendant's conviction of theft under $500; (2) the Defendant's admitted use of marijuana; and (3) the Defendant's juvenile record. The Defendant addresses the trial court's use of her juvenile record in her argument.

In *State v. Jackson*, the Tennessee Supreme Court considered whether enhancement factors (1) and (20) were mutually exclusive. 60 S.W.3d 738, 742 (2001). The Court stated, "Because the legislature is not presumed to have passed or enacted useless legislation, factor (1) must necessarily apply only to adult criminal conduct, and factor (20) [as amended, factor (16)] must apply exclusively to juvenile adjudications of delinquent acts." *Id*. (internal citation omitted). Because enhancement factor (1) only applies to adult conduct, the trial court impermissibly considered the Defendant's juvenile record with respect to this factor.

It may be possible to consider the Defendant's juvenile record under the aforementioned

4

enhancement factor (16) which states, "The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." T.C.A. § 40-35-114(16) (2006). However, our review of the Defendant's juvenile record shows that none of the nineteen counts would have resulted in a felony had she been an adult. Thus, the trial court improperly considered the Defendant's juvenile record in enhancing her sentence.

Next, the Defendant challenges the trial court's application of enhancement factor (7): "The offense involved a victim and was committed to gratify the defendant's desire for pleasure and excitement." T.C.A. § 40-35-114(7) (2006). The Defendant cites *State v. Anthony T. Jones* for the following proposition:

> In this case, while there was evidence that Appellant and the others committed the aggravated robbery in order to use the proceeds to obtain pleasure by purchasing and then consuming marijuana, there was absolutely no evidence that Appellant participated in the aggravated robbery in order to obtain pleasure or excitement from the robbery itself.

No. 03C01-9807-CR-00245, 1999 WL 538389, at *6 (Tenn. Crim. App., at Knoxville, July 14, 1999), *no Tenn. S. Ct. R. 11 application filed*. We find the *Jones* case distinguishable in that the Defendant testified that, "being in that robbery was just something I wanted to do." Because the Defendant's statement expresses desire to commit the robbery, not simply reap the rewards of the robbery, it was not error to apply this enhancement factor.

Next, the Defendant alleges error in the trial court's application of enhancement factor (10), "The defendant had no hesitation about committing a crime when the risk to human life was high." At the sentencing hearing, the State argued in support of this factor, focusing on the Defendant's lack of hesitation. Even assuming the Defendant lacked hesitation in committing this offense, we find that fact somewhat beside the point. This enhancement factor is inherent in the crime of aggravated robbery, unless the crime put individuals in addition to the victim at risk. *State v. King*, 905 S.W.2d 207, 213 (Tenn. Crim. App. 1995) ("This Court has previously held that absent any proof establishing risk to life other then [sic] the victim's . . . [factor (10) is an] essential element[ ] of [aggravated robbery] and, therefore, inappropriate.") (quotations omitted), *overruled on other grounds by State v. Williams*, 997 S.W.2d 101 (Tenn. 1998); *State v. Hicks*, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Williams*, 997 S.W.2d 101 (Tenn. 1998).

There is evidence in the record that at least one individual was outside his house when the victim arrived to deliver his pizza. However, the victim was escorted behind the vacant house, where he was robbed. There is no evidence anyone besides the victim saw the robbery or was threatened by the robbery. Thus, we conclude the trial court inappropriately applied this enhancement factor.

In support of the trial court's decision to enhance the Defendant's sentence, the State

5

presented evidence the Defendant had one conviction for theft under $500. The Defendant admitted she used marijuana and, although not used in support of enhancement, the Defendant also admitted she failed to appear in response to the theft charge for four years. She was ultimately arrested after a verbal altercation where the police were called. All of these support enhancement factor (1) – criminal convictions or criminal behavior. Additionally, as the trial court found, the Defendant committed this crime for pleasure or excitement.

The trial court determined that mitigating factor (13) applied – the "catch-all" mitigating factor – because the Defendant confessed to committing the crime. We would set the Defendant's sentence at ten years, but for the applicable mitigating factor. Like the trial court, we find that factor applies, and we give it slight weight, thus reducing the Defendant's sentence from ten years to nine years. *See* T.C.A. § 40-35-210(c) - (e) (2006).

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm as modified the judgment of the trial court. This case is remanded to the trial court for a judgment to be entered reflecting the Defendant is sentenced to nine years of incarceration, as a Range I offender.

_____
ROBERT W. WEDEMEYER, JUDGE