# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY SESSION, 1998

FILED

December 7, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9705-CC-00193** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **WILLIAMSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. DONALD P. HARRIS** |
| **DARRELL WENTZEL,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Aggravated Robbery; Aggravated** |
| | ) | **Burglary; and Aggravated** |
| | ) | **Kidnapping)** |


FOR THE APPELLANT:

EUGENE J. HONEA
Assistant Public Defender
407-C Main Street, P. O. Box 68
Franklin, TN 37065-0068

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH B. MARNEY
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

JOSEPH BAUGH
District Attorney General
P. O. Box 937
Franklin, TN 37065-0937


OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On December 6, 1996, a Williamson County jury convicted Appellant, Darrell Wentzel, of two counts of aggravated robbery, one count of aggravated burglary, and one count of aggravated kidnapping. After a sentencing hearing on January 31, 1997, Appellant was sentenced to twelve years for each count of aggravated robbery, twelve years for aggravated kidnapping, and six years for aggravated burglary, with all sentences to be served concurrently. On February 18, 1997, Appellant filed a motion for judgment of acquittal or, in the alternative, a motion for a new trial, claiming that the evidence was insufficient for a conviction, that the aggravating kidnapping conviction should be dismissed because it was incidental to the robbery, that several of the trial court's evidentiary rulings were erroneous, and that the trial court had misapplied enhancement factors to arrive at maximum sentences on all four convictions. The trial court denied the motion. Appellant challenges both his convictions and his sentence, raising the following issues:

> 1) whether the trial court committed plain error by admitting the in-court identification of the Appellant by Mary Ethel Veach;
> 2) whether there was sufficient evidence to corroborate the accomplice testimony of Edward Mitchem;
> 3) whether Appellant's convictions for two counts of aggravated robbery constituted double jeopardy;
> 4) whether the trial court correctly rejected Appellant's argument that he could not be convicted of aggravated kidnapping because it was only incidental to the robbery;
> 5) whether the trial court correctly sentenced the Appellant.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

On May 6, 1996, the home of Logan and Mary Ethel Veach was burglarized by two armed men who bound and robbed them. In addition, the two men also bound Ruth Poteete, a friend who was visiting the Veaches. One of the two men, Edward Mitchem, later confessed and testified for the State at trial.

Mitchem testified that he received a phone call from Appellant in October or November 1995, while Mitchem was living in Virginia. Appellant told Mitchem that he knew someone with a safe in his home that contained $500,000 and he wanted Mitchem to help break into the safe. Mitchem testified that Appellant called him three or four times and Mitchem agreed to come to Tennessee in March 1996. Mitchem testified that he stayed at the home of Appellant and his wife when he came to Tennessee.

Mitchem testified that he and Appellant discussed robbing Mr. Veach, the man Appellant identified as the owner of the home with the safe. Appellant told Mitchem that he learned about Mr. Veach from someone named Dudley who worked at the Coca Cola plant. Appellant and Mitchem later drove by the Veaches' home approximately ten to fifteen times to obtain information about the home. Approximately two weeks before the robbery, Mitchem and Appellant drove to the Veaches' home, pulled into the driveway, and Mitchem, disguised with a ski mask, approached the door. When Mrs. Veach came to the door and a dog began barking, Mitchem returned to the vehicle and the two men fled the scene.

Mitchem testified that on May 6, 1996, he and Appellant drove to the Veaches' home in a plain white car that belonged to Appellant's mother-in-law. Mitchem, who was carrying a clipboard and a scanner that Appellant had purchased from Radio Shack, gained entry to the Veaches' home by identifying himself as being from the Williamson County Sheriff's Department. After he entered the home, Mitchem drew a gun and ordered Mr. Veach, Mrs. Veach, and Mrs. Poteete to get down on the floor with their faces toward the floor. Appellant then entered the home and taped Mr. Veach's and Mrs. Poteete's hands behind their backs, taped their feet, and placed tape over their eyes. After she was bound with duct tape, Mrs. Poteete became ill and indicated that she was out of breath.

Mitchem testified that while Mr. Veach was on the floor, Appellant took money from his pocket. While Appellant was looking for a safe in another room, Mitchem took Mrs. Veach to a back bedroom. When Mrs. Veach said that there was no safe in the house, Mitchem and Appellant took some coins and jewelry and left the Veaches' home. Appellant and Mitchem then split up the coins and money between them. Mitchem later became frightened that he would be caught and he threw his half of the coins into a pond on Appellant's father's property located approximately 150 yards from Appellant's home. Detective David Beard of the Williamson County Sheriff's Department testified that coins were found in this pond and they were identified as those stolen from the Veach home on May 6, 1996.

Mr. Veach testified that on May 6, 1996, he saw two men pull up to his home in a white four-door car. Mr. Veach then saw Mitchem enter his home

-4-

carrying a note pad and what appeared to be a "walkie-talkie."  Mr. Veach testified that Mitchem then spoke into the "walkie-talkie" and shortly thereafter a second man entered the home.  Mr. Veach never saw the second man and he could not identify the Appellant.  Mr. Veach testified that he had approximately $5,900 in his pocket on the day of the robbery.

Mrs. Poteete testified that she became ill while she was bound and that she was taped for approximately twenty minutes.  She also testified that she did not see the man who taped her.  Neither man took anything from Mrs. Poteete.

Mrs. Veach testified that on May 6, 1996, she let Mitchem into her home because she thought that he was there from the Sheriff's Department in response to her report that an individual wearing a ski mask had previously been at the Veaches' home.  Mrs. Veach testified that she was never blindfolded, that she saw the Appellant when he came in, and "got a long look" at him two or three times.  When Mitchem asked her were the safe was, Mrs. Veach told him that there was no safe and said "Don't hurt us.  Logan has some money, and my son has some coins in there--take the money, just don't hurt us."  Mitchem then took coins from the back room and jewelry from Mrs. Veach's bedroom.

Mrs. Veach testified that she was unable to identify Appellant at the pre-trial line-up because there was something different about him.  She explained that Appellant's hair was shorter and styled differently from when she had seen him during the robbery.  Mrs. Veach also testified:

> I was under the impression when [Detective] Fred Bennett called me to the jail that they was [sic] holding the other guy there with Mr. Mitchem. And I said, "Now Fred, I'm not going to tell that this is the man because I'm not for sure." And he said, "Well, if you're not sure then you're not going to tell me that." I asked Fred Bennett where my husband was and he said "Up in the courtroom." As I walked into the courtroom, my family was sitting on the right; my husband was on the witness stand; Mr. Wentzel and some people sitting on the left. I says [sic] to my sister-in-law, "Well I'm glad that I did not identify that man they've got in jail out there because there sits the man that came in my house." And it was Mr. Mitchem.

Although she said "Mr. Mitchem," Mrs. Veach was apparently referring to Appellant. Mrs. Veach also testified that she thought she had been looking at some kind of pictures at the pre-trial line-up rather than at live persons. She stated that Appellant could not have been at the line-up "because I came strait to the courthouse and Darrell Wentzel was sitting with a group of people and there's no way he could have gotten there before I got there."

Gary Beasley testified that he picked Mitchem up at the Williamson County jail about a week before the robbery and took him to the Appellant's home at Mitchem's request. Beasley testified that no one was home, but when he later brought Mitchem back to the house, Mitchem got out of the car and Beasley left him there.

Teresa Walker, custodian of records at First Farmers and Merchants Bank in Columbia, Tennessee, testified that Appellant made a deposit of $1,000 cash to his account on May 7, 1996. She also testified that Appellant had written a check to Radio Shack in March of 1996.

Dudley Delffs testified that he works for Coca Cola and that in October or November, 1995, he had a conversation with Appellant about people in the area

who "had money," including Logan Veach. Delffs testified that although Brad Thompson, a relative of the Veaches, told him that they had a safe in their home, Delffs did not recall telling Appellant that the Veaches had a safe with $500,000 in it. Delffs testified that Appellant told him that he needed money because of financial losses in Chattanooga and several family illnesses.

Appellant testified and denied all involvement in the crimes and with Mitchem. Appellant, his wife, and his mother all testified that Mitchem did not stay at Appellant's home as he claimed.

## II. IN-COURT IDENTIFICATION BY MRS. VEACH

Appellant contends that it was plain error for the trial court to allow the in-court identification of Appellant by Mrs. Veach. Appellant concedes that this issue was not raised below either in the form of an objection to her testimony or in his motion for judgment of acquittal or a new trial. Accordingly, Appellant's attack on Mrs. Veach's testimony has been waived under Rule 3(e) of the Tennessee Rules of Appellate Procedure. Rule 3(e) states:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise, such issues will be treated as waived.

Tenn. R. App. P. 3(e). Appellant attempts to circumvent this failure to comply with Rule 3(e) by arguing that the trial court committed plain error under Rule 52(b) of the Tennessee Rules of Criminal Procedure, which states:

An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.

Tenn. R. Crim. P. 52(b).

In State v. Adkisson, this Court stated that the language of Rule 52(b) "makes it clear that appellate courts are to use it 'sparingly' in recognizing errors that have not been raised by the parties . . . . The plain error rule is not a run-of-the-mill remedy." 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). This Court then set out five factors to determine whether an error is plain error:

a) the record must clearly establish what occurred in the trial court;
b) a clear and unequivocal rule of law must have been breached;
c) a substantial right of the accused must have been adversely affected;
d) the accused did not waive the issue for tactical reasons; and
e) consideration of the error is "necessary to do substantial justice."

Id. at 641–42. Mrs. Veach's testimony does not satisfy this test. The record establishes what happened in the trial court, and it is doubtful that Appellant's failure to raise this issue at any time before appeal was a tactical ploy, but none of the other factors is applicable. Mrs. Veach's testimony does not represent a breach of a clear and unequivocal rule of law. Indeed, this is likely the reason why Appellant's counsel did not object to the testimony at trial. Further, there is no indication that a substantial right of the Appellant was adversely affected because, as explained in Section III, there was other evidence sufficient to corroborate Mitchem's accomplice testimony. Finally, consideration of this alleged error is not required to do substantial justice. Thus, this issue has no merit.

## III. CORROBORATING EVIDENCE

Appellant contends that the trial court erred when it denied his motion for judgment of acquittal because the evidence was insufficient as a matter of law to corroborate Mitchem's accomplice testimony. This Court stated in State v. Anderson, 880 S.W.2d 720 (Tenn. Crim. App. 1994):

> The standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies when determining the sufficiency of the evidence after a conviction. A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the state's theory. On appeal, the state is entitled to the strongest legitimate view of the evidence and any reasonable inferences which might be drawn therefrom. The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact. This court may neither reevaluate the evidence nor substitute its inferences for those drawn by the jury. A conviction may be set aside only when the reviewing court finds that the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.

Id. at 726 (citations omitted).

The appellate courts have addressed the nature, quality, and sufficiency of the evidence required to corroborate the testimony of an accomplice on numerous occasions. In State v. Griffis, 964 S.W.2d 577 (Tenn. Crim. App. 1997), this Court stated:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the

accomplice's testimony, tend to connect the defendant with the commission of the crime.

.  .  .  .

The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

Id. at 588–89 (citations omitted). "Whether a witness' testimony has been sufficiently corroborated is a matter entrusted to the jury as trier of fact." State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992) (citing Stanley v. State, 189 Tenn. 110, 222 S.W.2d 384 (1949)).

The evidence in this case clearly established at least the "slight circumstances" required to corroborate Mitchem's accomplice testimony. Most obvious, of course, was the testimony of Mrs. Veach that she clearly saw Appellant participate in the robbery. However, even without this identification, there was still enough evidence to sufficiently corroborate Mitchem's testimony. First, Dudley Delffs testified that in October 1995, he and Appellant had a conversation about various individuals in the area who had money and that Appellant mentioned the name of Logan Veach. Delffs also testified that Appellant told him that he had lost a lot of money. Second, Mr. Veach testified that a white car had been used in the crimes, corroborating Mitchem's testimony that he and Appellant used a white car owned by Appellant's mother-in-law to drive to the Veaches' home. Further, Mitchem's testimony that he lived in the Appellant's home while they were planning the robbery was corroborated by the

-10-

testimony of Gary Beasley that he took Mitchem to the Appellant's house. Mitchem's testimony that he stayed with Appellant was also buttressed by the fact that the police found some of the stolen coins in Appellant's father's pond about 150 yards from Appellant's house. In addition, Mitchem's statement that he and Appellant used a scanner in the robbery that Appellant purchased from Radio Shack in March 1996, was corroborated by Teresa Walker's testimony that Appellant had written a check to Radio Shack in March 1996. Finally, the evidence showed that Appellant made a $1,000 cash deposit into has bank account on the day after the robbery.

In short, there was sufficient evidence before the jury as the trier of fact to determine that Mitchem's testimony was sufficiently corroborated. This issue is without merit.

## IV. CONVICTIONS ON TWO COUNTS OF AGGRAVATED ROBBERY

Appellant contends that his convictions for two counts of aggravated robbery violate his rights under the United States and Tennessee Constitutions not to be convicted twice for the same offense.[1] This issue was not raised in the trial court. Nevertheless, we address this issue in order to review an alleged error of constitutional dimension. See State v. Lewis, 958 S.W.2d 736, 738 (Tenn. 1997) (reviewing double jeopardy issue even though not raised below).

---

[1]The double jeopardy clause of the United States Constitution provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Tennessee Constitution provides "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art I, § 10.

In State v. Denton, 938 S.W.2d 373 (Tenn. 1996), the Tennessee Supreme Court extended double jeopardy protection under the Tennessee Constitution beyond that provided by the United States Constitution. Thus, while multiple convictions for a single criminal action could be permitted by the United States Constitution under Blockburger v. United States, 384 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the result may be different under the Tennessee Constitution. Under Denton, resolution of a double jeopardy issue requires the following:

> (1) a Blockburger analysis of the statutory offenses; (2) an analysis guided by the principles of Duchac [v. State, 505 S.W.2d 237 (Tenn. 1973)], of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

Denton, 938 S.W.2d at 381.

Thus, we begin with the first Denton factor, an analysis under the Blockburger test. Under this test, we ask "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 556, 568 (1993). In this case, both counts of aggravated robbery contain an element that is not contained in the other. Count one required proof that property was taken from the person of Logan Veach while count two required proof that property was taken from the person of Mary Ethel Veach.[2] Because each robbery count required proof of an element not required by the other count, the Blockburger test

---

[2] Under the criminal responsibility provisions of Tennessee Code Annotated § 39-11-402 (1997), it does not matter whether it was Appellant or Mitchem who actually took property from Mr. or Mrs. Veach.

-12-

is satisfied and there is no violation of the federal double jeopardy clause. However, under Denton, our analysis under the state double jeopardy clause does not stop there.

The next step in the inquiry is the Duchac analysis of the evidence used to prove each offense. If the same evidence is not used to prove each offense, "'then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.'" Denton, 938 S.W.2d at 380 (quoting Duchac, 505 S.W.2d at 239). Here, the evidence used to prove each count was different, at least in part. Indeed, count one was established by evidence that Appellant took money from Mr. Veach's pocket and count two by evidence that Mitchem took Mrs. Veach away from Mr. Veach to a back bedroom where he took possession of the coins.[3] Count one did not require proof that anything was taken from Mrs. Veach and count two did not require proof that anything was taken from Mr. Veach. Thus, application of Duchac indicates that the two offenses are different for double jeopardy purposes.

We now turn to the third double jeopardy factor of Denton, the consideration of whether there were different victims or discrete acts. The two counts of aggravated robbery in this case relate to two discrete acts. First, Appellant tied up Mr. Veach and took money from his pocket. A few minutes later, Mitchem took Mrs. Veach out of the presence of Mr. Veach to a back room

---

[3]It is worth noting that "a robbery may be actual or constructive: it is actual when the taking is immediately from the person; and constructive when in the possession or in the presence of the party robbed." State v. Edwards, 868 S.W.2d 682, 700 (Tenn. Crim. App. 1993). The taking of the coins clearly occurred in the presence of Mrs. Veach.

-13-

where he took the coins. These two actions were clearly not a single act.[4] Further, there were clearly two victims here. "The fact that different victims are involved suggests that separate prosecutions would not violate double jeopardy principles under the Tennessee Constitution." State v. Winningham, 958 S.W.2d 740, 746 (Tenn. 1997).

The fourth and final step under Denton requires an analysis of the purposes of the statutes involved. Because both counts of aggravated robbery involved the same statute, the purposes are obviously the same: to prevent the theft of property from persons by force. However, no one factor is determinative and when each factor is weighed and considered in relation to the others, we conclude that Appellant's convictions for two counts of aggravated robbery do not violate either the federal or state double jeopardy clauses. This issue is without merit.

## V. AGGRAVATED KIDNAPPING CONVICTION

Appellant contends that his conviction for aggravated kidnapping violates his right to due process because the kidnapping was only incidental to the robbery. The Tennessee Supreme Court addressed the issue of whether both robbery and kidnapping convictions can be upheld when each conviction arises out of the same criminal episode in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). The court stated that the relevant inquiry is

---

[4]Appellant contends that there were no discrete acts in this case because there was no proof that the property taken from the Veaches was owned by them as individuals, rather than jointly. However, nothing in the aggravated robbery statutes requires proof of ownership. Tenn. Code. Ann. § 39-13-401 to -402 (1997). See also Elliot v. State, 2 Tenn. Crim. App. 418, 420, 454 S.W.2d 187, 188 (1970) (stating that right to possession of property taken is not the issue in the crime of robbery).

> [W]hether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction.

Id. at 306. The court cited the following test, as taken from Faison v. State, 426 So.2d 963, 965 (Fla. 1983), with approval:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>> (b) Must not be of the kind inherent in the nature of the other crime; and
>> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

Id. See also State v. Michael K. Christian, Jr., No. 03C01-9609-CR-00336, 1998 WL 125562, at *8–9 (Tenn. Crim. App., Knoxville, March 23, 1998).

It is clear that under this test, Appellant's conviction for aggravated kidnapping must be upheld. The binding of Mrs. Poteete's hands and feet with duct tape was certainly not slight or inconsequential. Indeed, this action was clearly a substantial interference with her liberty that increased the chance that she would suffer physical injury. Further, tying up the elderly Mrs. Poteete was not the kind of action that was inherent in the crime of robbing the Veaches because it was not necessary in order to commit the robberies. In addition, although it was not necessary to bind Mrs. Poteete, it did make the robberies easier by allowing both Appellant and Mitchem to search the house rather than requiring that one of them watch Mrs. Poteete. Finally, binding Mrs. Poteete's

hands and feet and taping over her eyes also lessened the risk of detection. This issue is, therefore, without merit.

## VI. APPELLANT'S SENTENCE

Appellant contends that his sentence is excessive because the trial court misapplied enhancement factors and failed to follow the appropriate sentencing guidelines. Under Tennessee law, "[w]hen reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d)(1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The defendant has the burden of demonstrating that the sentence is improper." Id.

A portion of the Sentencing Reform Act of 1989, codified at Tennessee Code Annotated § 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating

> factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the
> defendant wishes to make in his own behalf about sentencing.

Tenn. Code Ann. § 40-35-210 (1997). In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Act further provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." Tenn. Code Ann. § 40-35-210(f) (1997). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. Tenn. Code Ann. § 40-35-210 (1997) comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal. In addition, "[w]hen imposing sentences for multiple offenses, the trial court must make separate findings as to which enhancement and mitigating factors apply to which convictions." State v. Christopher Blockett, No. 02C01-9509-CC-00258, 1996 WL 417659, at *4 (Tenn. Crim. App., Jackson, July 26, 1996) (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994). In this case, the trial court failed to make separate findings as to which enhancement factors applied to which convictions. Thus, the sentences carry no presumption of correctness.

The trial court stated that in making its sentencing decision, it had considered the evidence presented during trial, during the sentencing hearing, and in the presentence report. The trial court found that no mitigating factors were applicable. We agree that no evidence was presented to support a finding that any of the enumerated factors of Tennessee Code Annotated § 40-35-113 were present. The trial court stated that it found that the following enhancement factors of Tennessee Code Annotated § 40-35-114 applied: (1) that Appellant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range; (2) that Appellant was a leader in the commission of the offenses; (3) that the offense involved more than one victim; (4) that the victims were particularly vulnerable because of age; (6) that the amount of money taken from Mr. Veach was particularly great; and (16) that the potential for bodily injury to a victim was great. For the following reasons, we hold that enhancement factors (1) and (2) apply to all four offenses, that (3) and (6) apply to some of the offenses, but factors (4) and (16) do not apply to any of the offenses.

The trial court was correct in applying factor (1). Indeed, Appellant has a previous conviction in 1979 for attempt to commit a felony. This conviction was not necessary to establish the appropriate range because other enhancement factors exist. See Tenn. Code Ann. §§ 40-35-105, -109 (1997). Appellant contends that he does not have a prior history of criminal convictions or behavior because one conviction cannot be a "history." However, this Court has previously held that factor (1) applied even though there had been only one previous conviction. State v. William Ray Rhodes, No. 02C01-9406-CC-00124, 1995 WL 425046, at *6 (Tenn. Crim. App. 1995). Thus, factor (1) could properly be used

to enhance all four of Appellant's convictions, although it deserves little enhancement weight. See id.

The trial court was correct in applying factor (2). Indeed, the evidence showed that Appellant was the leader in all four offenses: Appellant came up with the idea, planned the crimes, and enticed Mitchem to become involved. Appellant's contention that this factor should not have been applied because he was "a" leader rather than "the" leader has no merit. See State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993) ("Our cases have established that enhancement for being a leader in the commission of an offense does not require that the defendant be the sole leader but only that he be 'a' leader.").

The trial court erred in applying factor (3) to the aggravated robbery and aggravated kidnapping convictions because each of these offenses involved only one victim and there were separate convictions for each offense. See State v. Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App. 1995) (holding that factor (3) was an "improper enhancement factor, since there were separate convictions for each victim"). However, the trial court correctly applied this factor to the aggravated burglary conviction because both Mr. and Mrs. Veach were victims of this offense. See State v. Derek Denton, No. 02C01-9409-CR-00186, 1996 WL 432338 (Tenn. Crim. App., Jackson, Aug. 2, 1996) (stating that factor (3) can be applied to aggravated burglary convictions when more than one person is killed, injured, has property stolen, or has property destroyed).

The trial court erred in applying factor (4) because in committing the offenses, Appellant did not take advantage of the victims' ages or physical

conditions. As stated by this court in <u>State v. Butler</u>, 900 S.W.2d 305 (Tenn. Crim. App. 1994),

> [A] victim is particularly vulnerable within the meaning of this enhancement factor when the victim lacks the ability to resist the commission of the crime due to age, a physical condition, or a mental condition. A victim is also particularly vulnerable when his or her ability to summons assistance is impaired; or the victim does not have the capacity to testify against the perpetrator of the crime. However, a finding that one of these conditions exists does not, as a matter of law, mean that this factor is automatically considered. The appellant must have taken advantage of one or more of these conditions during the commission of the crime. The state had the burden of establishing the limitations that render the victim "particularly vulnerable." The state also had the burden of establishing that the condition which rendered the victim "particularly vulnerable" was a factor in the commission of the offense.

<u>Id.</u> at 313 (citations omitted). Here, the state failed to meet its burden. There was no evidence at all that either of the Veaches was particularly vulnerable and the only evidence that Mrs. Poteete was vulnerable was that she "had some kind of spell" during the robbery and needed a glass of water. There was no evidence that established that any vulnerability of the victims was a factor in the commission of the offense. Thus, the trial court should not have applied this factor.

The trial court was correct in applying factor (6) to the convictions for aggravated robbery of Mr. Veach and for aggravated burglary. Appellant contends that the trial court's determination that the approximately $6,000 taken from Mr. Veach was particularly great was "purely arbitrary and capricious." However, the evidence showed that Mr. Veach carries this amount of money on his person because he cannot read well enough to use checks. Indeed, Mr. Veach testified that he only "deals with cash." Clearly, Appellant's argument that

$6,000 is not a particularly great amount is without merit. However, this factor cannot be applied to the other convictions because there was no evidence that anything of particularly great value was taken from the other victims or that they sustained particularly great personal injury.

The trial court erred in applying factor (16). As to the aggravated burglary conviction, this Court has stated that for aggravated burglary convictions, "a trial court should not apply this factor absent extraordinary circumstances." State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App. 1994). There are no extraordinary circumstances in this case which warrant the application of this factor. As to the aggravated robbery convictions, this Court has also stated that absent any proof establishing risk to life other than the victim's, factor (16) is an essential element of the offense and it cannot be used for enhancement. State v. King, 905 S.W.2d 207, 213 (Tenn. Crim. App. 1995). This Court has also held that factor (16) cannot be used as an enhancement factor for the offense of aggravated kidnapping as it is inherent in the offense. State v. Kern, 909 S.W.2d 5, 7–8 (Tenn. Crim. App. 1993).

Even though we hold that the trial court erred in applying some of the enhancement factors, a finding that enhancement factors were erroneously applied does not equate to a reduction in the sentence. State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). There are no mitigating factors and at least two enhancement factors apply to each conviction. We place great weight on each of these enhancement factors considering the type of robbery and burglary involved. Home invasions by armed hooligans are perhaps one of

the most detestable and frightening forms of criminality.    Under these circumstances, we affirm the sentences imposed by the trial court.

Accordingly, the judgment of the trial court is AFFIRMED.

_____

JERRY L. SMITH, JUDGE

CONCUR:

_____

GARY R. WADE, PRESIDING JUDGE

_____

DAVID G. HAYES, JUDGE