IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 7, 2004

## STATE OF TENNESSEE v. MONOLETO D. GREEN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-C-1287    Steve Dozier, Judge**

_____

**No. M2003-02774-CCA-R3-CD - Filed May 5, 2005**

_____

The Defendant was convicted on a jury verdict of three counts of aggravated robbery and three counts of robbery. Following a sentencing hearing, he was sentenced on all six convictions as a Range II offender to an aggregate sentence of eighty-four years with all sentences to be served consecutively. On appeal, the Defendant argues two issues: 1) there was insufficient evidence to support one of his robbery convictions and all three aggravated robbery convictions; and 2) the trial court erred by imposing excessive sentences and by ordering all the sentences to be served consecutively. We affirm the judgments of the trial court as to the convictions but modify the Defendant's sentences to an aggregate term of seventy-eight years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

J. Michael Engle (at trial) and Jeffrey A. DeVasher (on appeal), Nashville, Tennessee, for the appellant, Monoleto D. Green.

Paul G. Summers, Attorney General and Reporter; Jennifer Bledsoe, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The convictions at issue in this case stem from a ten-day crime spree in which the Defendant, Monoleto D. Green, robbed five different motels in southeast Nashville, before he was apprehended by Metro Police while in the act of committing his sixth robbery. The Defendant committed his first

robbery on March 27, 2002, and his last on April 5, 2002. In addition to the close temporal proximity of the offenses, in each of the Defendant's signature crimes he: targeted a hotel in southeast Nashville; struck during the daylight hours; used a note written on a paper napkin demanding money, informing the victim he had a gun and warning them not to make him use it; and wore a bandana and dark sunglasses. Based on tips from victims and witnesses, the Defendant was identified as a suspect prior to his capture and was under police surveillance on April 5, 2002, when he was caught robbing the Intown Suites motel on Bell Road.

In July of 2002, the Defendant was indicted by a Davidson County grand jury on six counts of aggravated robbery. Just prior to trial, the prosecutor amended counts two, five and six to the lesser charge of robbery. Over the course of two days in May of 2003, the Defendant was tried by a jury. At trial, evidence concerning all six robberies was presented to the jury, a summary of which follows.

### 1. Aggravated Robbery of Best Western Motel on March 27, 2002.

Ms. Shirley McBride, an employee of the Best Western Music City on Old Hickory Boulevard, testified that she was working at the front desk the morning of March 27, 2002, when she was robbed by the Defendant. The Defendant handed her a note, written on a paper napkin, that stated, "I've got a gun. Give me all your money and don't make me use it." Ms. McBride testified that the Defendant kept his hand in his pocket the entire time except when he handed her the note. After she gave him approximately $226 from the cash register, the Defendant forced Ms. McBride to a back room and told her to count to one-hundred before coming out. After remaining in the back room for several minutes she returned to the front desk and called the police. She described the robber as a black male wearing dark sunglasses, a red bandana, khaki pants and a blue jacket. A short time after the robbery Ms. McBride was shown a series of photographs and positively identified the Defendant.

At trial, Ms. McBride testified that she "figured [the Defendant] had a gun." She also stated that in addition to the note declaring he had a gun, the Defendant warned her to not "do anything stupid," and "don't make me use it." Ms. McBride testified that "it scared me--I mean, I was scared." She further testified that she believed the Defendant did have a gun in his pocket and did not openly display it because they were in a public place. Ms. McBride also stated that when the Defendant forced her into the back room she thought he was going to kill her. On cross-examination, Ms. McBride admitted that at a prior preliminary hearing she testified that the Defendant's hands were hidden behind the counter.

### 2. Robbery of Super 8 Motel on March 28, 2002.

Ms. Lynn Brown, an employee of the Super 8 Motel on Bell Road, testified that she was working at the front desk the afternoon of March 28, 2002, when she was robbed by the Defendant. Ms. Brown stated that the Defendant displayed a note, written on a paper napkin, which read, "I have a gun. Give me all the money. Don't make me use it." When she did not immediately comply, the Defendant came around the counter and took $175 from the cash register. The Defendant then forced Ms. Brown into a restroom and told her to count to one-hundred before coming out. Ms.

Brown exited the restroom while the Defendant was still in the hotel, and he forced her back in. She eventually exited a second time and called the police. She described the robber as a black male wearing a blue jacket, red bandana and dark sunglasses. Shortly after the robbery Ms. Brown was shown a series of photographs from which she narrowed the suspects down to two, commenting that the Defendant's photograph was a "possibility." Ms. Brown positively identified the Defendant at trial.

At trial, Ms. Brown testified that she was "scared" during the robbery. She also stated that when the Defendant forced her into the restroom she thought he was going to rape her. Ms. Brown also testified that she could not see the Defendant's hands while he was behind the counter and did not observe whether the Defendant had his hand in his pocket or not.

### 3. Aggravated Robbery of Red Roof Inn on March 29, 2002.

Mr. Ross Tobin, an employee of Red Roof Inn on Sidco Drive, testified that he was working at the front desk in the early afternoon of March 29, 2002, when he was robbed by the Defendant. Mr. Tobin stated that the Defendant approached him and handed him a paper napkin on which was written, "Give me your money. I have a gun." Mr. Tobin stated that when he questioned whether the Defendant actually had a gun, the Defendant rushed around the counter with "his hand in his pocket, and, you know, I couldn't tell whether there was a gun or not. But at that point I decided better go along with it than to be a hero." The Defendant took $321 from the cash register while Mr. Tobin ran to a back room and locked the door. Mr. Tobin observed the Defendant taking the money via the motel's security system, which had a monitor in the back room to which he fled. Mr. Tobin described the robber as a black male wearing a black jacket and blue bandana. The police recovered the video tape from the motel's surveillance system as well as the paper napkin note left at the scene. Shortly after the robbery Mr. Tobin was shown a photographic lineup but was unable to make a positive identification. Mr. Tobin positively identified the Defendant at trial.

At trial, Mr. Tobin testified that the Defendant had his hand in his pocket and this caused him considerable alarm. He stated: "I was concerned that [the Defendant] was going to shoot me . . . I was concerned about my life." On cross-examination, Mr. Tobin was asked if he saw "any article that was either fashioned to appear to be a weapon or fashioned in such a way that it might trick you into thinking it was a weapon?," to which he replied, "No sir. I just saw his hand in his pocket."

### 4. Aggravated Robbery of Intown Suites on April 2, 2002.

Ms. Stephanie Buzzell, an employee of Intown Suites on Bell Road, testified that she was working at the front desk the afternoon of April 2, 2002, when she was robbed by the Defendant. Ms. Buzzell stated that the Defendant walked up to her and handed her a note, written on a paper napkin, that stated he had a gun and she should give him "the money." Before she could respond the Defendant came over the counter, took $800 from the cash register, and forced Ms. Buzzell into a restroom where she stayed for approximately five minutes. She described the robber to the police as a black male wearing a grey sweatshirt, blue jeans, red tennis shoes, a red bandana and dark sunglasses. The Defendant also took the video tape from the motel surveillance system. Shortly

after the robbery Ms. Buzzell was shown a photographic lineup from which she positively identified the Defendant's photograph.

At trial, Ms. Buzzell testified that the Defendant had one hand inside the front pocket of his sweatshirt and because of this she "thought that the note was serious and he had a gun." She further testified that during the robbery she feared for her life, stating "I was terrified. I -- I had never been through something like this before. I thought I was gonna get killed or beaten, raped. I mean, I didn't -- it was terrifying."

Also at trial, Officer Earl Hunter, a Crime Scene Investigator with the Metro Police Department, testified that he pulled latent fingerprints from the counter the Defendant touched as he jumped over the front desk. Ms. Lorita Marsh, a civilian contractor for Metro Police, was certified as an expert in finger print analysis and identification at trial. She testified that the prints taken from the April 2, 2002, crime scene at Intown Suites were a positive match to the Defendant.

**5. Robbery of Intown Suites on April 3, 2002.**
Ms. Misty Melvin, an employee of Intown Suites on Murfreesboro Road, testified that she was working at the front desk the afternoon of April 3, 2002, when the Defendant robbed her. The Defendant handed Ms. Melvin a note, written on a paper napkin, that read, "I have a gun. Give me all your money. Don't make me use it." The Defendant then came over the counter and pushed himself between Ms. Melvin and housekeeper Jennifer Thompson, took money from the cash register, and ordered Ms. Melvin to open the motel safe. After taking the money from the safe, the Defendant demanded and received the video tape from the motel surveillance system. The Defendant then forced both Ms. Melvin and Ms. Thompson into a back restroom. From inside the restroom Ms. Melvin heard the Defendant leave and immediately radioed to the motel maintenance men that she had been robbed and they should get the tag number from the car driven by the man leaving the parking lot and call the police. The Defendant escaped with approximately $835.

At trial, Ms. Melvin testified that she was "a little scared" during the robbery, and she remained in the restroom until she was sure the Defendant had left "[i]n case he had a gun, I didn't want him to turn around and shoot me, if I came out." However, she also testified that he used both hands when he pushed her and Ms. Thompson apart and she only saw him with his hand in his pocket one time. Shortly after the robbery Ms. Melvin was shown a photographic lineup, and while she narrowed the photos down to two suspects, she was unable to positively identify the Defendant's photograph.

Detective Mike Chastain of the Metro Police Department testified that he responded to the crime scene and obtained a description of the robber from Ms. Melvin and Ms. Thompson. They described the robber as a black male wearing a red shirt, red bandana and dark sunglasses. Detective Chastain also talked to maintenance man Michael Condrin, who testified that he observed the suspect get into a red Toyota Tercel with Tennessee tag number KNW-441. The Detective determined this vehicle was registered to the Defendant. Shortly thereafter the Defendant's vehicle was discovered at a motel just off I-24 in Smyrna, Tennessee. Detective Daniel Whitehurst testified

that he found a video tape in the dumpster outside the motel where the Defendant was registered. The tape was inoperable, but the label was still intact. Ms. Melvin later identified this tape as the one taken by the Defendant during April 3rd Intown Suites robbery. Thereafter, the Metro Police kept the Defendant's car under constant surveillance.

### 6. Robbery of Intown Suites on April 5, 2002.

Detective Mike Chastain testified that on April 5, 2002, he observed the Defendant get in his car and he and other officers followed the Defendant as he drove to southeast Nashville and parked across the road from the Bell Road Intown Suites. The Defendant watched the motel for about an hour before he pulled into the motel parking lot and entered the office shortly after noon. A member of the police contingent shadowing the Defendant called the motel and spoke to Ms. Buzzell, who confirmed the Defendant was at that moment in her office and had just handed her a robbery note.

Ms. Buzzell testified that she was working at the front desk of the Intown Suites on Bell Road shortly after noon on April 5, 2002, when a man approached her counter whom she recognized as the same man who had robbed her three days earlier. The Defendant handed her a paper napkin robbery note and jumped over the counter. He demanded that she open the cash register and safe. Ms. Buzzell stated that at this point the phone rang, she answered it, and it was the police who informed her they were right outside and that everything would be alright. The Defendant took $1,816 and forced Ms. Buzzell into the same restroom as before. The Defendant also took the motel's surveillance system video tape. Ms. Buzzell stated that she remained in the restroom until a housekeeper came to get her. She subsequently identified the Defendant, then in the custody of the police in the motel parking lot, as the man who robbed her on both April 2 and April 5 of 2002. Ms. Buzzell also testified at trial that on both occasions when the Defendant robbed her, he made "flinching" movements with his hand inside his pocket which further led her to believe he had a weapon.

Detective Chastain testified at trial that he and the other police officers left the Defendant alone while in the motel to avoid a hostage situation in accordance with the department's policy. He stated that the Defendant was apprehended upon exiting the motel and the physical evidence recovered included the surveillance system video tape, a red bandana, dark sunglasses, the robbery note and $1,816. The Defendant was wearing khaki pants and red tennis shoes. No weapon was found on the Defendant.

At trial, the Defendant admitted that he took money from the motels in all six incidents for which he was charged, but maintained that in each case he never intended to put any of the motel employees in fear. He further claimed that he never used a weapon or displayed any article that would lead a victim to reasonably believe he had a weapon. He also claimed that he did not have his hand in a pocket during any of the robberies for which he was charged with aggravated robbery.

The jury found the Defendant guilty of all six offenses as charged, and the trial court entered judgments for three convictions of aggravated robbery and three convictions of robbery. A sentencing hearing was held in July of 2003. While the Defendant made an oral motion at the hearing requesting a mental health evaluation, he presented no evidence on this or any other issue.

At the conclusion of the sentencing hearing, the trial court denied the Defendant's request for a mental health evaluation and sentenced the Defendant as a multiple, Range II offender to the following: twenty years for each of his Class B felony convictions for aggravated robbery in counts one and four; eighteen years for his Class B felony conviction for aggravated robbery in count three; eight years for each of his convictions for Class C felony robbery in counts two and five; and ten years for his conviction for Class C felony robbery in count six. The trial court further ordered that all the sentences be served consecutively, resulting in an effective sentence of eighty-four years.

The Defendant filed a motion for new trial and a motion for judgment of acquittal in August of 2003, and an amended motion for new trial in September of 2003. An evidentiary hearing was conducted in September of 2003, and shortly thereafter the trial court issued an order denying both of the Defendant's motions. The Defendant timely filed a notice of appeal.

## ANALYSIS

On appeal, the Defendant raises three separate issues: 1) there was insufficient evidence to support the three convictions of aggravated robbery because the Defendant never displayed any article used or fashioned to lead his victims to believe was a deadly weapon; 2) the evidence was insufficient to support the robbery conviction in count six because the victim was never placed in fear; and 3) the trial court erred by imposing excessive sentences and by running them consecutively.[1] We agree that sentences for three of the Defendant's six convictions were improperly enhanced.

### I. Procedural Issue

We begin our analysis by first briefly addressing a procedural issue. The Defendant, while represented by counsel on appeal, has submitted several pro se letters of correspondence to this Court attempting to supplement the record on appeal and to amend his appellate brief to add additional claims.[2] However, the Defendant is represented by counsel, and it has long been our rule that a Defendant may not be represented by counsel in this Court and simultaneously proceed pro se. See State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976); State v. Cole, 629 S.W.2d 915, 917-18 (Tenn. Crim. App. 1981). Accordingly, the Defendant's pro se motions are denied, and all improperly submitted evidence and testimony has not been considered by this Court in its adjudication of this case.

---

[1] For the sake of efficiency and clarity we have combined the Defendant's three substantive issues into the two discussed below.

[2] The Defendant submitted four letters to this Court, two stating he wished to exercise his "constitutional right" to represent himself. We note that a criminal defendant has no right under either the federal or Tennessee state constitution to represent himself on an appeal of a conviction. See State v. Gillespie, 898 S.W.2d 738, 741 (Tenn. Crim. App. 1994). His other two letters were self-titled "Motions to Amend Brief," in which he outlined four additional claims he believed his attorney should have included in his appellate brief. In three of the four letters, he included the following statement: "If these convictions are not overturned it will be a miscarriage of justice, and I will committ [sic] suicide."

## II.  Sufficiency Issues

The Defendant asserts that the evidence contained in the record is insufficient to support his three convictions for aggravated robbery because he never displayed an article fashioned to lead a victim to reasonably believe it was a weapon, and no rational juror could have found his final theft rose to the level of a robbery because the victim was never placed in fear.  We disagree.

### A.  Standard of Review

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt.  See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom.  See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599.  A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence.  See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659.  Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact.  See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

### B.  Robbery Conviction

Tennessee law defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear."  Tenn. Code Ann. § 39-13-401(a).  Thus, at trial, the State bore the burden of proving that the Defendant intended: (1) the theft of property from another, (2) by violence or fear.

It is uncontroverted that the Defendant intended the theft of property from another, and the State never alleged violence, therefore the key issue is whether the victim in count number six was put in fear.  The Defendant asserts that because the police informed Ms. Buzzell via telephone that they were right outside ready to take the Defendant into custody and reassured her that she would be all right, she handed over the money not out of fear, but to ensure the Defendant would be caught in the act.  Specifically, the Defendant argues that the absence of testimony from the victim that she

was afraid, the absence of any visible manifestation of fear in the surveillance video of the robbery viewed by the jury, and the reassurance of the police establishes that the Defendant did not conduct this theft by placing the victim in fear. Thus, the Defendant claims, the evidence would support, at the very most, a conviction for simple theft of property under count six. The State argues that while Ms. Buzzell did not expressly state at trial that she was afraid during the second robbery, it was clear from her testimony and actions that she was placed in fear, and a jury could reasonably infer as much from the evidence presented at trial.

The record reveals that during the robbery in question the victim recognized the Defendant as the same person who robbed her a few days earlier--the same person she testified she believed had a gun the first time they met. During the first robbery, she feared the Defendant would rape or kill her. The victim quickly complied with all of the Defendant's orders during the second robbery, including opening the safe and giving him the security system video tape. When the police called and told her to leave the phone off the hook she did not, testifying that she "couldn't" because she was afraid the Defendant would become suspicious. When the Defendant forced her into the restroom she remained inside until she was informed the police had the Defendant in custody. This evidence supports the jury's conclusion that the victim was in fear during the second robbery. As stated above, this Court will not re-weigh evidence nor substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37. Accordingly, we find the Defendant has failed to meet his burden of demonstrating why the evidence presented at trial was insufficient to support his conviction for robbery in count six. The issue is without merit.

### C. Aggravated Robbery Convictions

The Defendant also challenges all three of his aggravated robbery convictions. As stated above, a robbery is the theft of property from another by violence or fear. A robbery becomes aggravated when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). Thus, at trial, the State bore the burden of proving that the Defendant intended: (1) the theft of property from another, (2) by violence or fear, (3) with the use or display of a deadly weapon or display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon.

It is not alleged that the Defendant physically displayed a deadly weapon in any of the three incidents which led to his aggravated robbery convictions. The Defendant asserts that the evidence is also insufficient to prove the Defendant fashioned any article to lead a victim to "reasonably believe" he had a deadly weapon. In support of his argument the Defendant notes that in count one the victim merely stated that she "figured" the Defendant had a gun, in count two the victim out-right questioned whether the Defendant actually had a weapon but ultimately decided he should not try to be a "hero," and in count four the victim testified that she never saw a gun but was "terrified." The Defendant claims that merely placing a hand inside a pocket while claiming to have a gun does not satisfy the required element for an aggravated robbery in Tennessee. While unable to cite to any controlling case law in which a Tennessee court held a "hand in the pocket" alone is insufficient to

satisfy the elements of aggravated robbery, he argues that this Court has expressed reservations on the issue and also points to several cases favorable to his position from other jurisdictions.[3]

The Defendant directs the Court's attention to State v. Daryl Jemison, No. 01C01-9303-CR-00107, 1994 WL 108944 (Tenn. Crim. App., Nashville, March 31, 1994), in which this Court upheld an aggravated robbery conviction but stated, "[w]e have reservations about a hand in a jacket, without more, supporting a conclusion beyond a reasonable doubt that there was a 'display of [an] article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon.'" Id. at *2. The Defendant argues that because this Court in Jemison relied upon the defendant's "hand positioning" within the pocket to suggest he was armed, we should in his case require more than just a hand in a pocket. Id. The Defendant further argues that this Court should rely on the aggravated robbery definitions for "display" and "article" outlined in State v. Aaron Cooper, No. 01C01-9708-CR-00368, 1998 WL 668263, at *2 (Tenn. Crim. App., Nashville, Sept. 30, 1998) (holding that "display" included "gestures" made with the concealed hand, and "article" included a "situation where a robber fashions or conceals his hand like a gun or other weapon"). Additionally, the Defendant asks this Court to elevate the Cooper definitions to the status of a firm rule, making them the minimum standard of evidence necessary for a "hand in the pocket" scenario to satisfy the aggravated robbery "display of a weapon" element. In short, the Defendant argues that this Court should always require proof that a defendant made gestures indicating a weapon, and proof that the defendant's hand itself was held in a manner that visibly suggested it was a gun or other weapon, before such an offense would constitute an aggravated robbery. Because, the Defendant argues, he merely had his hand in his pocket and nothing more, he should be convicted of no more than robbery.

Tennessee law does not require the prosecution to prove a defendant made "gestures" while his hand was in a pocket, or that he "shaped" his hand in a manner that resembled a weapon before the elements of aggravated robbery are satisfied. We decline to judicially narrow the definition of our aggravated robbery statute by establishing such an arbitrary threshhold evidentiary standard, and we refuse to so constrain juries from performing their legitimate duties as fact finders. Rather, we reaffirm reliance upon our established case law on this issue.

This Court has previously ruled that an actual weapon need not be displayed in order to meet the requirements of the aggravated robbery statute. See State v. Davenport, 973 S.W.2d 283, 286 (Tenn. Crim. App. 1998) (holding that the evidence was sufficient to support aggravated robbery where the defendant fashioned a rag over his empty hand to lead the store clerk to believe he held a weapon). Additionally, this Court has issued several opinions specifically addressing the "hand in the pocket" aggravated robbery scenario from which it may draw guidance. While this Court expressed in dicta some "reservations" in State v. Jemison, the clear holding of the case was that

---

[3]The Defendant asserts that the aggravated robbery statutes of Arizona, Georgia, and Michigan are similar to Tennessee's statute and we should consider the case law from these jurisdictions, which have "made specific findings as to the type of evidence required to establish the offense of aggravated robbery." As addressed infra, this Court has previously declined to reach outside of our own case precedent on this issue and we decline to do so now.

"[t]he jury was entitled to accredit the defendant's threat and to infer from it and his hand positioning that he was armed." Jemison,1994 WL 108944, at \*2. In Cooper, this Court made no attempt to write definitions for "display" and "article" which would establish a minimum level of evidence sufficient to support any armed robbery conviction; rather, we responded to the appellant's argument that the statute was unconstitutionally vague in light of the facts of that case. See Cooper, 1998 WL 668263, at \*2. In dismissing Mr. Cooper's claim of vagueness, we noted that the language of our current aggravated robbery statute was "intended . . . to include robbery committed under the pretense of being armed," and already included a safeguard or "restriction" by requiring that the victim "reasonably believe it to be a deadly weapon." Id.

In another factually similar case, this Court found the victim's perceived threat of a weapon reasonable and upheld a conviction for aggravated robbery where the defendant never explicitly threatened the victim, but kept one hand in his pocket and his "posture made it appear" to the victim that he was armed. State v. Frederick Corlew, No. M2001-00842-CCA-R3-CD, 2002 WL 31478266, at \*3 (Tenn. Crim. App., Nashville, Nov. 1, 2002). Furthermore, this Court addressed and rejected many of the same arguments presented by the Defendant in this case in State v. Melvin Harper, No. E2001-01089-CCA-R3-CD, 2002 WL 31777647 (Tenn. Crim. App., Knoxville, Dec. 12, 2002). In Harper, we upheld the aggravated robbery conviction of a defendant who "had something under his jacket" and told his victim to "open the [cash register] drawer or I'll kill you." Id. at \*1. This Court declined to narrowly interpret the Jemison precedent as requiring an aggravated robbery defendant to expressly announce he had a concealed weapon, and instead reaffirmed the Jemison holding that a "'jury was entitled to accredit the [appellant's] threat and to infer from it and his hand positioning that he was armed.'" Id. at \*4 (quoting Jemison, 1994 WL 108944, at \*6). This Court also rejected Mr. Harper's argument that we should follow the case law of Arizona, Georgia and Michigan, noting that "because our law is clear on the matter, we see no need to look to the law of other states." Id.

In one of our most recent cases addressing this issue, this Court upheld aggravated robbery convictions where "the Defendant's hand was under his clothing as if holding a gun." State v. Lawrenzo Menton, No. W2002-00267-CCA-R3-CD, 2003 WL 21644936, at \*12 (Tenn. Crim. App., Jackson, July 2, 2003). We note that the common threads running through all of the above referenced cases on this issue are: 1) a hand concealed in an article of clothing; and 2) a threat-- express or implied--that caused the victim to "reasonably believe" the offender had a deadly weapon and was not opposed to using it.

We conclude that the Defendant has failed to demonstrate that the evidence is insufficient to support his aggravated robbery convictions. In the order denying the Defendant's motion for a new trial, the trial court found:

Each victim testified that the defendant handed them a note stating he had a gun. . . The defendant's actions and warnings to each of the victims gave them every indication that he could carry out his threats using a weapon. Each of the victims fully believed that they would be shot and testified that they were "concerned for [my] life" or "I thought he was going to kill me" or "I was terrified." The Court is

unable to conclude that the victims' apprehension of the defendant's threat to use the firearm was unreasonable.

We find the evidence in the record on appeal supports the trial court's conclusions. In count one the victim testified that the Defendant displayed a note declaring he had a gun and warned the victim not to "make him use it." The Defendant kept his hand in his pocket in a manner that led the victim to "figure" he had a gun. In count three the victim testified that the Defendant displayed a note demanding money and declaring he had a gun. When the Defendant rushed around the counter with his hand in his pocket, the victim stated he became "concerned [the Defendant] would shoot me." In count four, the victim testified that the Defendant handed her a note demanding money and declaring he had a gun. The Defendant had his hand in his sweatshirt pouch which made the victim believe "the note was serious and he had a gun." This same victim also testified that the Defendant made "flinching" movements that reinforced her belief that he did indeed have a gun.

The jury was entitled to accredit the testimony of all three victims: that the Defendant's note threatening he had a gun combined with his hand concealed in his pocket led each of them to believe he was armed. Considering the nature of the threats and other circumstances surrounding the robberies in this case, the presence of the Defendant's hand in his pocket was sufficient for a jury to conclude that the Defendant displayed an article "fashioned to lead the victim to reasonably believe it to be a deadly weapon." See Tenn. Code Ann § 39-13-402(a)(1). After considering all the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found all the essential elements of aggravated robbery beyond a reasonable doubt. Therefore this claim is without merit.

## III. Sentencing Issues

The Defendant argues that the trial court imposed excessive sentences and improperly ordered all six sentences to be served consecutively. Specifically, the Defendant asserts that the trial court misapplied one enhancement factor in setting the sentences for his aggravated robbery convictions in count one and four, and asks this Court to reduce the length of his sentences on those counts. The Defendant also argues that the trial court erred in ordering consecutive service of all six sentences, thereby imposing an effective eighty-four year sentence, and asks this Court to order concurrent sentences on all counts or a lesser aggregate sentence. We agree with the Defendant that the trial court erred in its application of one enhancement factor applied to counts one and four. We modify the Defendant's sentences on those two counts. However, we find the trial court did not err in ordering the Defendant's sentences to be served consecutively.

A. Standard of Review

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own

behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App., 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

B. Excessive Sentence

The Defendant asserts that the trial court erred by imposing an excessive sentence for two of his three Class B felony aggravated robbery convictions. In calculating a sentence for a Class B felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class B felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e).

The sentence for a Class B felony as a multiple, Range II offender is "not less than twelve (12) nor more than twenty (20) years." Tenn. Code Ann. § 40-35-112(b)(2). Thus, the presumptive sentence for a Class B felony conviction of aggravated robbery for a Range II offender, as in this case, is twelve years. However, the weight to be afforded enhancement factors is left to the trial court's discretion so long as it complies with the principles of the sentencing act and the court's

-12-

finding are supported by the record.[4]  See State v. Palmer, 10 S.W.3d 638, 646 (Tenn. Crim. App. 1999).

In the case at hand, the trial court determined the Defendant to be a multiple, Range II offender.[5]   The court next determined that enhancement factor eleven, that the Defendant "had no hesitation about committing a crime when the risk to human life was high," applied to the sentences for the aggravated robbery convictions in counts one and four. Tenn. Code Ann. § 40-35-114(11). The court also found that enhancement factor two, the Defendant's previous criminal history, and factor fourteen, committing a felony while on probation from a prior felony conviction, both applied to the sentences for all six of his convictions.  See Tenn. Code Ann. § 40-35-114(2) and (14).  The court found no mitigating factors applicable in the Defendant's case.  Based on these findings, the trial court enhanced the Defendant's sentence beyond the presumptive sentence by eight years in counts one and four, by six years in count three, by two years in counts two and five, and by four years in count six.

1. Enhancement factor number eleven

The Defendant asserts enhancement factor eleven, that the Defendant committed the crimes without hesitation when the risk to human life was high, is a fact essential to the elements of the offense of aggravated robbery and therefore cannot be applied in his case.  On appeal, the State concedes that the trial court's application of enhancement factor eleven to the Defendant's sentences for his aggravated robbery convictions in counts one and four is error.

Tennessee Code Annotated section 40-35-114 outlines twenty-three different enhancement factors that a court may apply to a defendant's sentence, provided the factors are not "themselves essential elements of the offense as charged in the indictment."  Id.  This Court has previously held that the enhancement factor for committing an offense without hesitation when the risk to human life was high cannot be applied to a sentence for aggravated robbery because it is "essentially [an] element[] of the offense" considering  "there is necessarily a high risk to human life . . . whenever a deadly weapon is used."  State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995).  Thus, the current enhancement factor number eleven cannot be applied to a sentence for aggravated robbery absent proof that the defendant committed the crime with high risk to the life of a person other than the victim named in the indictment.  See State v. King, 905 S.W.2d 207, 213 (Tenn. Crim. App. 1995) (overruled on other grounds).

In the case at hand, the trial court made no finding that the Defendant's conduct in counts one and four presented a high risk to human life to persons other than the named victims.  Accordingly, we find the trial court erred in applying enhancement number eleven to the Defendant's sentences

_____

[4]We note that the Tennessee Supreme Court has considered the implications of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), and has concluded that Tennessee's sentencing structure does not violate a defendant's Sixth Amendment right to a jury trial.  See State v. Gomez, __ S.W. 3d __  (Tenn. 2005).

[5]The Defendant does not challenge the fact that his criminal record requires that he be sentenced as a multiple, Range II offender.

for aggravated robbery in counts one and four. We reduce the Defendant's sentence in count one from twenty years to eighteen years, and in count four from twenty years to eighteen years.

Because the trial court placed no findings in the record as to why it enhanced by four years the Defendant's sentence for his robbery conviction in count six as opposed to the two year enhancement of his other two robbery convictions, it failed to comply with the statutory provisions governing sentencing as to this sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). Accordingly, our review of this sentence is de novo without a presumption of correctness. Id. After reviewing the evidence contained in the record on appeal, we also reduce the Defendant's count six sentence by two years. Thus, the Defendant's sentences are now as follows: eighteen years for his Class B felony convictions for aggravated robbery in counts one, three and four, and eight years for his convictions for Class C felony robbery in counts two, five and six, for a total aggregate sentence of seventy-eight years.

### C. Consecutive Sentences

In his final claim, the Defendant asserts that the trial court erred in ordering him to serve all six of his sentences consecutively. To support this claim, the Defendant argues that the trial court failed to make adequate findings that the Defendant was a "dangerous offender," and that the effective eighty-four year sentence (modified to seventy-eight years) does not reasonably relate to the offenses he committed. We disagree.

We begin by noting that it is within the sound discretion of the trial court whether or not to impose consecutive or concurrent sentences. See State v. Adams, 973 S.W. 2d 224, 230-31 (Tenn. Crim. App. 1997). A Tennessee court may order consecutive sentences in cases where it finds any of seven statutorily enumerated criteria to be applicable "by a preponderance of the evidence." Tenn. Code Ann. § 40-35-115(b). In addition to these criteria, consecutive sentencing is also subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that the defendant's "potential for rehabilitation" be considered. Tenn. Code Ann. § 40-35-103(2), (4) and (5). Additionally, we are advised that "the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Tenn. Code Ann. § 40-35-115 Sentencing Commission Comments.

In the case at hand, the trial court found three consecutive sentencing criteria applied: the Defendant was "an offender whose record of criminal activity is extensive," he committed a crime in which "the risk to human life [was] high,"[6] and he was "sentenced for an offense committed while on probation." Id. at § 40-35-115(b)(2), (4) and (6). The trial court also stated that it issued consecutive sentences because of the "severity of the offenses and the necessity of protecting the public in the future," noting that while the Defendant believed he did nothing more than commit thefts, his victims were "scared for their lives."

---

[6]We believe the trial judge's intended finding was that the Defendant was a "dangerous offender." See Tenn. Code Ann. § 40-35-115(b)(4).

While the Defendant objects to the application of all three of the consecutive sentencing criteria applied by the trial court, he especially objects to the application of criterion (4) in which he was labeled a "dangerous offender" for committing a crime with high risk to human life. Tenn. Code Ann. § 40-35-115(b)(4). The Defendant asserts this criterion should not apply in his case considering none of his victims or any bystanders were hurt, and he did not actually possess a weapon during the commission of his crimes. He also points to State v. Wikerson, 905 S.W.2d 933, 938 (Tenn. 1995), in which our supreme court ruled that "[e]very offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences," and requires trial courts to make specific findings before the criterion can be applied.

We need not make the determination of whether the trial court erred in classifying the Defendant as a "dangerous offender" because consecutive sentences may be applied if <u>any</u> of the statutory criteria are established by a preponderance of the evidence. Addressed at length above, we find the record contains sufficient evidence of the Defendant's extensive prior record of criminal activity and sufficient evidence that he committed his offenses while on probation from a prior felony to support the trial court's imposition of consecutive sentences based on criteria two and six. <u>See</u> Tenn. Code Ann. § 40-35-115(b)(2) and (6). The Defendant's effective sentence of seventy-eight years is the result of his pattern of continued criminal activity and obvious unwillingness to reform when given rehabilitation opportunities outside of prison. Only a few weeks after receiving probation for a felony drug conviction, the Defendant resumed his criminal activities and managed to place five separate victims in fear of their lives within a few days. The Defendant has shown that he has little or no potential for rehabilitation, his crimes are becoming increasingly dangerous, and the general public deserves protection from the Defendant. The Defendant's criminal history, lack of rehabilitative potential, and the severity of his most recent crimes of robbery and aggravated robbery demand a severe sentence. Accordingly, we affirm the trial court's imposition of consecutive sentencing.

## CONCLUSION

We affirm the judgments of the trial court as to the Defendant's convictions. We modify the Defendant's aggravated robbery sentences in counts one and four to eighteen years each, and modify the robbery sentence in count six to eight years. In all other respects, we affirm the judgments of the trial court, modifying the effective sentence to seventy-eight years.

_____
DAVID H. WELLES, JUDGE

-15-